[Civ. No. 7162. First Appellate District, Division One.—February 24, 1932.]

M. M. LESSER, Appellant, v. W. B. McGERRY & COMPANY, INC. (a Corporation), et al., Respondents.

Livingston & Livingston for Appellant.

Heller, Ehrman, White & McAuliffe and Donald W. Falconer for Respondents.

DOOLING, J., *pro tem.*—In this action the plaintiff and appellant, Lesser, sued to recover from defendants and respondents, who are real estate brokers, the sum of $1,000 received by such brokers as a deposit or down payment from the proposed purchasers of certain real property belonging to Lesser, under a contract negotiated by said brokers. From a judgment for defendants Lesser appeals.

It appears that the property had been listed for sale with respondents by one Berry acting under an oral authorization only from Lesser. Subsequently respondents secured a contract with Peter J. Finocchio and Louis Ravano to purchase said property for $86,500 subject to Lesser's approval, and received from Finocchio and Ravano the deposit of $1,000 here in question. On the following day this contract was exhibited to Berry, and Berry, purporting to act as Lesser's agent, signed a document, "M. M. Lesser, By B. S. Berry", purporting to ratify this sale for $85,375 net to the seller. The

printed form of ratification so executed contained the words "W. B. McGerry & Co. may keep and retain as remuneration for their services hereunder —— per cent upon the said amount of $——." These words were stricken from the ratification agreement by drawing a line through them before it was signed. Thereafter the purchasers refused to proceed and after negotiations between them and Lesser they were released from their contract upon paying Lesser $2,150 and assigning to him any rights that they might have in the $1,000 deposit. Thereupon this action was commenced and judgment followed for defendants on the theory that they were entitled to retain the $1,000 as a commission earned by them under their contract.

■ Appellant first takes the position that the ratification agreement signed by Berry does not satisfy the statute of frauds, since he was admittedly not authorized in writing to execute it. Ordinarily this position would be good, but in this case we are satisfied that the statute was waived by appellant. It is to be remembered that here the party to be bound was the plaintiff and as a part of his own case he offered in evidence the ratification executed by Berry purporting to act as his agent. To this offer counsel for respondents objected unless plaintiff offered the document as binding on himself. After a running discussion the court said: ". . . if it has any obligation at all to the plaintiff, it has a binding obligation, and it is by reason of the fact that some contractual liability rests upon him by reason of that, it must have some credibility. It must have if it has any effect at all, . . . the effect of establishing the relationship between these parties, and it results in mutual duties, obligations and liabilities, and unless it were genuine neither party would be bound." To this counsel for appellant replied: "I will agree to that", and upon that agreement the objection was withdrawn and the document admitted. If the benefit of the statute can be waived by the mere failure to object to the admission of evidence as has frequently been held (*Nunez* v. *Morgan,* 77 Cal. 427 [19 Pac. 753]; *English* v. *Shipley,* 71 Cal. App. 45 [234 Pac. 334]; *Healy* v. *Obear,* 29 Cal. App. 696 [157 Pac. 569, 570]), it certainly may be waived by express stipulation upon the trial as was the case here.

■ The contract in question being a net contract by which the brokers were to receive only the excess of the purchase price over $83,375, it would ordinarily be true that they would not be entitled to a commission unless the contract was carried out and the purchase price paid (*Ford* v. *Brown*, 120 Cal. 551 [52 Pac. 817]), there being no legal duty upon the seller after default by the buyer to take legal steps to enforce the contract for the brokers' benefit. (*Dunne* v. *Colomb*, 192 Cal. 740 [221 Pac. 912].) On the other hand, if the seller wrongfully refuses to carry out the contract, the purchaser being ready, able and willing to do so, the seller becomes liable for the commission. (*Sill* v. *Ceschi*, 167 Cal. 698 [140 Pac. 949].)

■ Under the authority of *Ford* v. *Brown*, *supra*, and *Dunne* v. *Colomb*, *supra*, it is clear that if appellant herein had terminated the contract and forfeited the deposit upon the default of the buyers, respondents would be in no position to claim their commission. Respondents urge, however, that having elected to stand upon the contract and collect damages from the buyers by way of compromise and settlement, appellant has taken himself out of the rule of these cases. We have been cited to no case in California in which this precise question has arisen and we are therefore compelled to seek authorities in other jurisdictions. In *Haber* v. *Goldberg*, 92 N. J. L. 367 [105 Atl. 874, 876], the Court of Errors and Appeals of New Jersey had under consideration a case in which a broker had effected a contract of exchange for his principal, his commission to be paid "on the date set for the delivery of the deed". The other party to the exchange having refused performance, the broker's principal sued the other party and recovered damages for his default. The broker's claim to the commission was disputed by the principal on the ground that the condition precedent to its payment, the delivery of the deed, had through no fault of his own never occurred. The New Jersey court said: ". . . the broker's commission cannot be defeated because title did not pass, for, by suing the third party for a breach of the contract between them and recovering damages therefor, the defendant, as between himself and the plaintiff, was not entitled to repudiate his undertaking with the latter for compensation for negotiating the very contract which was the basis of that suit."

In *Dermody* v. *New Jersey Realties, Inc.*, 101 N. J. L. 334 [128 Atl. 265], the same court considered the effect upon a similar contract of a money payment obtained by the seller from the purchaser in settlement of his default on the contract of purchase. The court held that the broker was entitled to his commission under the authority of *Haber* v. *Goldberg, supra,* saying: "It is not perceived that there is any difference between a case where the vendor sued a defaulting purchaser and recovered damages for the default, which precludes the idea of any repudiation of the contract sued on, as in *Haber* v. *Goldberg,* or entering into substitutional contract with the defaulting purchaser and thereby, by way of compromise and agreement, securing damages which otherwise could have been recovered by suit, as in this case."

We are satisfied with the reasoning of these cases. The seller, upon the purchasers' default, is not bound to take the initiative (*Dunne* v. *Colomb, supra*), but if he elects to take the initiative can he do so to the exclusion of the brokers' interest in the contract? We think not. The contract is a tri-party contract from the performance of which by its terms both the seller and the brokers are entitled to a profit. While the seller is not bound upon the purchasers' default, to take any steps to enforce the contract for the brokers' benefit, if he elects to take such steps he should not be permitted to ignore and sacrifice the brokers' interest in the contract and enforce it solely for his own benefit.

Under the contract the purchasers were bound to pay $86,500, only $85,375 of which was to be received by the seller. The balance of $1125 under the terms of the contract was to be paid to the brokers. For a money consideration by way of settlement of the full obligation to pay $86,500, in the performance of which the brokers had an interest as well as the seller, the purchasers were released *in toto.* The brokers' interest in the purchase price was compromised and released along with the seller's. Having undertaken to do this, without consulting the brokers, the settlement so effected should inure to the benefit of respondents as well as appellant.

In this view of the case, it is immaterial that the language binding appellant to pay a commission was stricken from the ratification agreement. If the contract had been fully performed, respondents would have received $1125

thereunder, and in a suit against the buyers for its breach that $1125 would have entered properly as an element of damage. Appellant having undertaken to settle the damages by way of compromise, the same damages must be held to have been in contemplation of the parties. This distinguishes this case from the net price cases cited by appellant, in none of which did the seller effect a money settlement for the damages involved.

Finally, appellant points to a provision in the contract that in case of a forfeiture of the deposit "said agent shall . . . retain one-half thereof, or as much thereof as may be equal to the amount of the commission earned", and claims that in any event respondents are entitled thereunder to no more than $500. It is a sufficient answer to this contention that the deposit was not forfeited, but a money settlement was negotiated and effected instead.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 25, 1932.