## BENNETT *v.* THOMPSON.

Opinion delivered November 6, 1916.

1. REAL ESTATE BROKERS—SALE PRICE—DUTY TO MAKE DISCLOSURE.—
The duty rests upon a broker, the same as upon any other agent, to make disclosures to his principal of the terms of the negotiation so that the principal may act advisedly in determining whether or not the proposal is satisfactory. A broker may make a contract whereby he will be entitled to the difference between the price the seller agrees to accept and the amount the purchaser agrees to pay, regardless of what that amount is, but such a contract must be plainly expressed in order to relieve the broker of the duty he owes to his principal to make full disclosure concerning the terms of the negotiation.

2. REAL ESTATE BROKERS—SALE PRICE—FAILURE TO MAKE DISCLOSURES.
A broker, A., undertook to procure a sale of land belonging to B. A. found a purchaser who agreed to purchase for $750. A. wrote B. that he could procure for her the net price of $500 for the land and B. wired an acceptance. When B. discovered the facts she refused to consummate the sale, and A. sued her for $250 commissions. *Held,* B. had the right to disregard the trade on account of A.'s unfaithfulness, and was not liable to A. in any amount.

Appeal from Pulaski Circuit Court; Second Division; *Guy Fulk*, Judge; reversed and dismissed.

*J. W. & J. W. House, Jr.,* and *A. F. House,* for appellant.

1. Whether one acts as a broker or agent, his duty to the principal is the same, and the compensation, when not expressed, is the same. 42 N. E. 298; 47 N. E. 717.

Plaintiff, in order to recover, must show that he was defendant's agent, and, as a condition precedent to such recovery, he must show a faithful discharge of his duties. He cannot advance his own interests at the expense of the principal. Bad faith on the part of an agent or broker is a perfect defense to any action for commissions. 4 R. C. L., Brokers, No. 43; 82 Ark. 381; 76 Ark. 396; 94 N. E. 260. The case should be reversed and dismissed.

2. It is also a prerequisite to the recovery of commissions that the agent show that he has produced a purchaser who was ready, willing and able to take the

property upon the terms proposed by the seller. 97 Ark. 22; 88 N. W. 15. The burden was on the appellee to show this state of facts, and therein he has wholly failed. There were two "offers" here. The first from a man who was to pay $500.00 net, immediately, and who failed to consummate his offer as appellee admits and second, this offer of $750.00 provided appellee was allowed $250.00. Appellant was at liberty to decline the second offer, or any other offer, since she was to pass upon any offer submitted. 179 Mass. 480; 4 R. C. L., Brokers, No. 52; 20 How. 224. The first offer of $500.00 net can not be construed to mean anything except an agreement to take that sum for the land, and pay the broker a reasonable compensation, provided there was no express agreement fixing his compensation. 70 Ark. 58; 51 Ill. App. 448; 27 Ill. App. 244; Gross on Real Estate Brokers, Par. 216; 130 Ga. 713.

*Hutton & Harkey,* for appellee.

McCulloch, C. J. This is an action instituted by appellee against appellant to recover the amount of broker's profit on a sale of real estate. Appellant owned a tract of land at Magazine, Arkansas, and authorized appellee to find a purchaser for her, which he did and reported the sale to her, but appellant refused to consummate the deal on the ground that appellee had deceived her by withholding information concerning the true amount of the agreed price, and appellee sues to recover the difference between the amount of the price which appellant agreed to accept for the land and the amount he was to receive from the purchaser. The case was tried before a jury in the circuit court and each side asked a peremptory instruction. The court gave the appellee's requested instruction, so the question presented to us on this appeal is whether or not the testimony, viewing it in its strongest light in appellee's favor, is sufficient to sustain the verdict. *St. Louis Sw. Ry. Co.* v. *Mulkey,* 100 Ark. 71. The testimony

will, therefore, be stated in its strongest light favorable to appellee's right of recovery.

The two parties to the controversy met in Little Rock, where appellee resided, and appellant informed appellee that she owned land at Magazine and asked him to find a purchaser for her. Nothing was said at that time about the price nor about the payment of any commission. Appellant then returned to her home in Muskogee, Oklahoma, and later appellee found a prospective purchaser who agreed to take the land at the price of $750. He wrote to appellant, informing her that he had found a purchaser and that he could sell the land so as to get her the net price of $500, but said nothing about the price he was to get from the purchaser. She replied by telegram, accepting the offered price, and appellee then wrote to her instructing her to make the deed to the purchaser, reciting a consideration of $750, and forward the deed to one of the banks in Little Rock with instructions to pay him (appellee) $250 out of the consideration to be paid. Appellant refused to consummate the sale when she ascertained the true price for which the land was sold.

Appellee testified that he was not acting as agent for Miss Bennett, the appellant, and was not buying the property for himself, but was acting as a broker and expected to earn as a profit the difference between the price Miss Bennett agreed to accept and the price to be paid by the purchaser. He testified that the customary commission of a real estate agent was 5% on the amount of the sale, but that it was customary for a broker to earn a greater profit on a deal negotiated by him. Under this state of facts, we are of the opinion that appellee's conduct in withholding from appellant the information as to the amount of the purchase was a wrongful act which prevents him from recovering the amount claimed, or any amount. The case is ruled by several decisions of this court.

In *Boysen* v. *Robertson*, 70 Ark. 56, the facts were that Robertson, a real estate broker, agreed to seek

a purchaser for Mrs. Jones, the owner of certain lands, at the price of $3.00 per acre net to her. Boysen's agent, Thweatt, was authorized to purchase the land at $4.00 an acre, and the two agents, Robertson and Thweatt, got together and negotiated a sale and purchase between their principals for $4.00 an acre. One half of the difference between the net price which the owner had agreed to accept and which the prospective purchaser had agreed to pay was to be allowed to Robertson for his commission. The two principals subsequently disregarded this agreement and negotiated a sale direct between themselves at the price of $4.00 per acre.

Robertson sued Boysen for the commission he was to receive, and in denying the relief sought this court said: "The contract meant that the land must bring to Mrs. Jones three dollars per acre over and above all expenses and deductions. * * * This was only a limitation upon his power to sell. It was still his duty to sell the land for the highest price obtainable, and to account to Mrs. Jones for the proceeds, less a compensation not greater than the excess of the purchase money over three dollars per acre net, and at the same time not exceeding a reasonable compensation. The whole amount for which he sold the land was due to and recoverable by Mrs. Jones. If he had collected it, he might have reserved out of it what his principal was owing him on account of the sale. But the contract made by him was never completed.

In *Taylor* v. *Godbold*, 76 Ark. 395, the facts were similar except that the subject matter of the contract was personal property. The court delivering the opinion quoted the following statement of the law from Mechem on Agency, Sec. 952: "Like other agents in whom trust and confidence are reposed, the broker owes to his principal the utmost good faith and loyalty to his interests. * * * It is his duty, therefore, to fully and freely disclose to his principal at all times the fact of any interest of his own or of another client which may be antagonistic to the interests of his prin-

cipal, and he will not be permitted to take advantage of the situation to make gain for himself by forestalling or undermining his principal." It was held that the broker was not entitled to recover any commission.

The same doctrine is announced in *Featherston* v. *Trone,* 82 Ark. 381.

It is contended by counsel for the appellee that the principle announced by this court does not control for the reason that he was acting, not as an agent, but as a broker. This argument overlooks the fact that a brokerage transaction is governed by the doctrine of agency.

"A broker is a peculiar kind of an agent," says the Indiana court, "and brokerage is a peculiar kind of agency. It is the business of a broker to negotiate contracts between others in matters of trade and commerce. He usually deals with the contracting parties, and not with the things which may be the subject of the contract. He has neither interest in nor possession of the property which it is his business to buy or sell for others, and ordinarily he has no implied power to buy or sell in his own name. It is in these respects that a broker differs from a factor and from an ordinary agent." *Haas* v. *Ruston,* 14 Ind. App. 8, 42 N. E. 298.

The rule is again stated as follows: "A broker acting strictly as middleman to effect a purchase and sale of property is the common agent of both buyer and seller; otherwise he is the agent of the party originally employing him." 19 Cyc. 191. To the same effect see Rapalje on Real Estate Brokers, Sec. 2, and Gross on Real Estate Brokers, Sec. 141.

The Supreme Court of the United States, in *Hooper* v. *California,* 155 U. S. 648, quoted with approval a text-writer's definition of broker and principal as follows: "The engagement of a broker is like to that of a proxy, a factor, or other agent; but, with this difference, that the broker, being employed by persons who having opposite interests to manage, he is, as it were, agent both for the one and the other to nego-

tiate the commerce and affair in which he concerns himself. Thus, his engagement is twofold, and consists in being faithful to all the parties in the execution of what every one of them entrusts him with. And his power is not to treat, but to explain the intentions of both parties, and to negotiate in such a manner as to put those who employ him in a condition to treat together personally.''

(1)    The duty therefore rests upon the broker the same as any other agent to make disclosure to his principal of the terms of the negotiation so that the principal may act advisedly in determining whether or not the proposal is satisfactory. A broker can undoubtedly make a contract whereby he will be entitled to the difference between the amount of the price the seller agrees to accept and the amount the purchaser agrees to pay, regardless of what the amount is. But such a contract must be plainly expressed in order to relieve the broker of the duty he owes to his principal to make full disclosure concerning the terms of the negotiation.

This rule is very aptly stated by the Georgia court as follows: "We do not mean to hold that if the real estate brokers who are plaintiffs in this case had alleged an express contract that if they should procure a purchaser for the property listed with them they might have as compensation for their services all that they might sell the property for, above a fixed sum, they would not be entitled to such excess as compensation for their services, in case they procured a purchaser. But where the owner agrees with brokers for them to sell property for a named amount "net to him" such language will not be held to import by implication a contract to allow the brokers, as a fee or profit, all of the purchase price in excess of the sum so named." *Matheney, etc.* v. *Godin,* 130 Ga. 713.

(2)    It follows, therefore, that appellee is not entitled to recover the profit which he claims to have earned by the sale. If appellant, after receiving knowledge of the terms of the sale, had accepted the price

offered and consummated the sale, she would have been liable to appellee for a reasonable compensation. *Boysen* v. *Robertson, supra.* But appellant refused to consummate the sale after she ascertained the 'true conditions, and appellee did not ask for a consummation on any other terms. Appellant had the right to disregard the trade on account of appellee's unfaithfulness, and is therefore not liable to him for any amount. *Featherston* v. *Trone, supra; Little* v. *Phipps,* (Mass.) 94 N. E. 260.

The judgment of the circuit court is therefore reversed, and the cause is dismissed.